**CV 09 982**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y

★ MAR 10 2009 ★

LONG ISLAND OFFICE

---

KENNETH IWANICKI and PENELOPE IWANICKI,

Plaintiffs,

-against-

NANODYNAMICS, INC. and NORMAN ROTHSTEIN,

Defendants.

---

Civil Action No.:

COMPLAINT

**BIANCO, J.**

**WALL, M.J.**

The Plaintiffs, KENNETH IWANICKI and PENELOPE IWANICKI, by their undersigned counsel, as and for their complaint against the Defendants, NANODYNAMICS, INC. ("Nano") and NORMAN ROTHSTEIN ("Rothsetin"), allege the following:

1. This is an action for securities fraud, under the laws of the United States, under the laws of the States of New York and Illinois, and at common law.

THE PARTIES

2. The Plaintiff Kenneth Iwanicki is, and at all relevant times was, an individual who resides at 967 West Shore Drive, Fox Lake, IL 60020.

3. The Plaintiff Penelope Iwanicki is, and at all relevant times was, an individual who resides at 967 West Shore Drive, Fox Lake, IL 60020. Penelope Iwanicki is Kenneth Iwanicki's wife.

4. The Defendant Nano is, and at all relevant times was, a corporation formed and existing under the laws of the State of Delaware, with its offices and principal place of business located at 901 Fuhrmann Boulevard, Buffalo, New York 14203.

1

5. The Defendant Rothstein is, and at all relevant times was, an individual who resides in Nassau County, State of New York.

6. Upon information and belief, Rothstein was one of the founders of Nano, and is and was at all relevant times a principal shareholder of the company. Rothstein was described in Nano filings with the United States Securities and Exchange Commission as a "promoter" of the company, and acted as such and as an agent on behalf of Nano in the activities described below.

## JURISDICTION

7. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 in that the action arises under the laws of the United States.

8. The Court also has jurisdiction over the case pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship between and among the parties, and the amount in controversy exceeds the amount of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

9. Venue in this Court is proper under 28 U.S.C. §1391(a) in that one of the defendants – i.e., defendant Rothstein – resides in this district, and all defendants reside in this State, and a substantial part of the events or omissions giving rise to the claim took place in this District.

## FACTS PERTAINING TO ALL CAUSES OF ACTION

10. Commencing in August, 2005 and continuing to August, 2008, Mr. Iwanicki employed the services of a securities broker named Richard Lewin ("Lewin"), who was employed at the time by a registered broker/dealer named Basic Investors, Inc. ("Basic"). Basic

had its main office, and a satellite office, in Melville, New York. Lewin was based in the satellite office.

11. The Plaintiffs are contemporaneously commencing a FINRA arbitration against Lewin and Basic, among others, arising out of claims based, inter alia, upon the activities described below. Neither Nano nor Rothstein is a party to an arbitration agreement with the Plaintiffs.

12. In 2006 both Lewin and Rothstein pressured Mr. Iwanicki into purchasing very high risk, non-liquid shares in a private placement for Nano. They both told Mr. Iwanicki they thoroughly familiar with the company and its plans and prospects through one of its founders, Rothstein. Rothstein was identified by Lewin as the President of Nano.

13. Rothstein spoke over the phone with Mr. Iwanicki in March, 2006, and discussed Nano with him. Mr. Iwanicki told Rothstein that he and his wife were retired, that they lived almost completely on social security, that they had a limited amount of capital, and that all of that was already invested in other stock. He told Rothstein that he simply did not have any additional money to invest in Nano.

14. Rothstein nonetheless persisted in trying to get the Iwanickis to invest in Nano. Among other things, he and Lewin sent the Plaintiffs a range of documents pertaining to the Nano private placement. These included a Private Placement Memorandum ("PPM") dated August 8, 2005, and thus was out of date. It also included a number of news articles pertaining to Nano. Upon information and belief, none of these documents had been filed with the SEC or with either the State of Illinois or the State of New York.

15. The PPM expressly stated that the offering was limited to accredited investors. Neither of the Plaintiffs was an accredited investor, and Rothstein was aware of that.

16. Using these documents, Rothstein and Lewin endeavored to get the Iwanickis to mortgage their house and to use the money from the attendant loan to purchase Nano stock.

17. Among other things, Rothstein told Mr. Iwanicki that Nano had a number of government contracts, and that because of the existence of these contracts, Nano was sure to be highly profitable and successful in the immediate future. He also told Mr. Iwanicki, "We're (i.e., Nano) is about to go public. Within months you're going to double your money. Once you do that, you can easily pay off the mortgage and still have a large profit."

18. Rothstein purposely failed and omitted to tell the Iwanickis that Nano would need persistent infusions of private monies in the future to remain a viable company and not go out of business.

19. The foregoing statements by Rothstein were false when made, and Rothstein knew they were false. They were made to the Iwanickis to induce them to invest in Nano.

20. The Iwanickis believed these statements when they were made, and in reliance on them, they did take out a mortgage on their house and invested $65,000 in Nano in late March, 2006.

21. Nano never went public. At the time that Rothstein made the aforesaid representations to the Plaintiffs, the company was not even close to attempting to go public, and Rothstein was fully aware of that. The company has not been highly successful as promised by Rothstein, and the shares of Nano stock purchased by the Iwanickis are not publicly traded and are now essentially worthless.

22. After waiting more than a year without Nano going public, the Plaintiffs began to suspect that they had been defrauded.

## FIRST CAUSE OF ACTION

23. Plaintiffs repeat and reallege each and every of the allegations set forth in the preceding paragraphs as if fully set forth herein.

24. The foregoing fraud constitutes a manipulative or deceptive device or contrivance in violation of Section 10(b) of the Federal Securities and Exchange Act, 15 U.S.C. § 78j(b), and the related Rule 10b-5 of the Securities and Exchange Commission, 17 CFR § 240.10B-5.

25. By reason of the foregoing fraud, the Iwanickis have been damaged in the amount of $65,000, plus all interest paid under their mortgage. The latter will continue to increase as further interest becomes due to be paid. This amount should be trebled pursuant to the damages provisions of the Federal Securities laws.

## SECOND CAUSE OF ACTION

26. Plaintiffs repeat and reallege each and every of the allegations set forth in the preceding paragraphs as if fully set forth herein.

27. The foregoing constitutes fraud under the Illinois Securities Law, 815 ILCS 5 and under the common law of the State of Illinois.

28. By reason of that fraud, the Iwanickis have been damaged in the amount of $65,000, plus all interest paid under their mortgage. The latter will continue to increase as further interest becomes due to be paid.

29. The foregoing statements were made for the purpose of harming the Plaintiffs, and otherwise with malice as defined by the laws of the States of Illinois. Consequently, the Plaintiffs are entitled to punitive damages in the amount of $500,000.

## THIRD CAUSE OF ACTION

30. Plaintiffs repeat and reallege each and every of the allegations set forth in the preceding paragraphs as if fully set forth herein.

31. The foregoing constitutes fraud under the laws of the State of New York, both at common law and under NYGBL §§ 339-a and 352-c

32. By reason of that fraud, the Iwanickis have been damaged in the amount of $65,000, plus all interest paid under their mortgage. The latter will continue to increase as further interest becomes due to be paid.

33. The foregoing statements were made for the purpose of harming the Plaintiffs, and otherwise with malice as defined by the laws of the State of New York. Consequently, the Plaintiffs are entitled to punitive damages in the amount of $500,000.

WHEREFORE, the Plaintiffs, Kenneth Iwanicki and Penelope Iwanicki, demand judgment against the Defendants, NanoDynamics, Inc. and Norman Rothstein, jointly and severally, as follows:

A) On the first cause of action, compensatory damages in the amount of $65,000, plus all interest payable on the mortgage that they were defrauded into taking out, all of which should be trebled;

B) On the second cause of action, compensatory damages in the amount of $65,000, plus all interest payable on the mortgage that they were defrauded into taking out, together with punitive damages in the amount of $500,000;

C) On the third cause of action, compensatory damages in the amount of $65,000, plus all interest payable on the mortgage that they were defrauded into taking out, together with punitive damages in the amount of $500,000; and,

D) On all causes of action, an award of the costs of this action and of the Plaintiffs' reasonable attorneys' fees.

## JURY DEMAND

The Plaintiffs hereby demand a trial by jury of all issues to be tried herein.

Dated: February 27, 2009

*[signature]*

Michael J. Calvey (MC 3446)
Michael J. Calvey LLC
Attorneys for Plaintiffs
8000 River Road, Ste. 10D
North Bergen, NJ 07047
Tel.: 201-442-0851